IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CHICO NAKIA CURRY, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:22-CV-022 |
| | § | |
| DIRECTOR BOBBY LUMPKIN, *et al.,* | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT & BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants Bobby Lumpkin, Terry Burson, and William Wheat (hereafter "Movants") who move for summary judgment on the merits.[1] Plaintiff names Movants in their individual capacities only, alleging they displayed deliberate indifference to his need for protection. *See* Dkt. #27, 7–15. But the evidence attached to this motion demonstrates that Movants have only limited connection to Plaintiff's requests for protection. The evidence also demonstrates that the Texas Department of Criminal Justice ("TDCJ") investigated Plaintiff's requests and, after Plaintiff was assaulted in January 2020, took action to minimize the risk to Plaintiff's safety by transferring him to different prison units, away from the threats he identified. While Plaintiff is evidently dissatisfied with TDCJ's response, preferring instead to be placed in protective custody, even taking the evidence in light most favorable to Plaintiff, Movants did not violate the Eighth Amendment. Movants are also entitled to qualified immunity because they acted reasonably and the purported Eighth Amendment violation is not beyond debate.

---

[1] As Plaintiff has already asked the Court to dismiss existing defendant Nicholas Hannah from this case and the Court has not taken up Plaintiff's opposed request to add a new defendant, Zachary Hanna, to the case, neither Hannah nor Hanna join in this summary judgment motion.

## TABLE OF CONTENTS

Table of Contents ....................................................................................................................... ii

Plaintiff's Complaint.................................................................................................................... 1

Statement of the Issues ............................................................................................................... 3

Statement of Undisputed Material Facts...................................................................................... 3

Standard of Review ................................................................................................................... 11

Legal Background...................................................................................................................... 12

   A.   42. U.S.C. § 1983 ......................................................................................................... 12

   B.   Eighth Amendment: Failure to Protect ......................................................................... 12

   C.   Qualified Immunity ...................................................................................................... 14

Arguments & Authorities .......................................................................................................... 15

   A.   Director Lumpkin.......................................................................................................... 15

      1.   Director Lumpkin did not violate the Eighth Amendment. ............................................ 15

      2.   Director Lumpkin is entitled to qualified immunity. ..................................................... 19

   B.   Assistant Warden Burson .............................................................................................. 20

      1.   Assistant Warden Burson did not violate the Eighth Amendment. ............................... 20

      2.   Assistant Warden Burson is entitled to qualified immunity........................................... 23

   C.   Assistant Warden Wheat................................................................................................ 23

      1.   Assistant Warden Wheat did not violate the Eighth Amendment. ................................ 23

      2.   Assistant Warden Wheat is entitled to qualified immunity. .......................................... 25

Prayer ....................................................................................................................................... 25

## PLAINTIFF'S COMPLAINT

In his live pleading, Plaintiff names four defendants in their individual capacities only: Bobby Lumpkin, TDCJ's Director of Correctional Institutional Division ("Director Lumpkin"); Nicholas Hannah, a correctional officer at the Beto 1 Unit ("Officer Hannah"); Terry Burson, an Assistant Warden at the Beto 1 Unit in early 2020 ("Assistant Warden Burson"); and William Wheat, an Assistant Warden at the Beto 1 Unit in early 2020 ("Assistant Warden Wheat"). Dkt. #27, 7–15. Plaintiff alleges that each defendant was deliberately indifferent to one or more assaults he experienced at the hands of fellow inmates. *Id.* Plaintiff's complaint appears to bring deliberate indifference claims under the Eighth Amendment brought under 42 U.S.C. § 1983.[2] *See generally id.* For these alleged constitutional violations, Plaintiff seeks monetary damages, a preliminary (but not permanent) injunction[3], and a declaration that (1) specific events transpired as alleged and (2) Defendants should have granted Plaintiff's requests for protective custody rather than transferring him to different units. *Id.* at 16–17.

Plaintiff has since indicated that he did not intend to sue Nicholas Hannah and asked the Court to "release defendant Nicholas Hannah from this Civil Suit." Dkt. #62 at 1. Officer Hannah does not oppose Plaintiff's request to dismiss the claims against him, *see* Dkt. #66, and Officer Hannah does not move for summary judgment, as no such motion is needed. The summary judgment movants are therefore the three remaining defendants: Director Lumpkin, Assistant

---

[2] Under Federal Rule of Civil Procedure 8(a)(2), as liberally applied to pro se inmates, the complaint must only give the defendants fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). While Plaintiff's pleading neither specifically invokes 42 U.S.C. § 1983 nor the Eighth Amendment, Defendants recognize that these omissions are not dispositive. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12 (2014).

[3] The Court denied Plaintiff's motion for preliminary injunction on November 9, 2022. Dkts. #25, #71.

Warden Burson, and Assistant Warden Wheat. Plaintiff bases his Section 1983 claims against these defendants on the following pleadings:[4]

Plaintiff contends that Director Lumpkin was deliberately indifferent to "assaults and hospitalizations by the hands of the gang affiliated inmates on different Units." Dkt. #27 at 7. Plaintiff bases Director Lumpkins' purported deliberate indifference on (1) the Director's general duty "to ensure [Plaintiff's] physical and mental safety" and (2) two letters Plaintiff alleges he mailed to Director Lumpkin on December 9 and December 30, 2021, requesting that Plaintiff be put in safe keeping or protective custody. *Id.* Plaintiff alleges that, in response to inmate assaults, he was repeatedly transferred to different units, away from the unit in which the assaults occurred. *Id.* at 12. Plaintiff believes that unit transfers were not an adequate response and that he should not have been placed in general population. *Id.*

Plaintiff contends that Assistant Warden Burson was deliberately indifferent to his need for protection from other inmates. Dkt. #27 at 9. Assistant Warden Burson's putative liability stems from an incident that allegedly occurred on January 19, 2020, where Plaintiff was attacked by another inmate. *Id.* at 14. Plaintiff bases Assistant Warden Burson's purported deliberate indifference on: (1) a request for Offender Protection Investigation ("OPI") and two grievances (#2020067197) and (#2020080670). *Id.* at 9, 14.

Plaintiff alleges that Assistant Warden Wheat was deliberately indifferent to his need for protection from other inmates. Dkt. #27 at 10–11. Again, Assistant Warden Wheat's putative

---

[4] While Defendants move for summary judgment based on evidence, not on the pleadings, Defendants are only required to address claims for which they have fair notice. *See Erickson*, 551 U.S. at 93–94. A brief synopsis of the claims and grounds presented in Plaintiff's pleadings may, therefore, aid the Court's review even in a summary judgment posture.

liability stems from an incident that allegedly occurred on January 19, 2020, where Plaintiff was attacked by another inmate. *Id.* at 15. Plaintiff bases Assistant Warden Wheat's purported deliberate indifference on: (1) a request for OPI and two grievances (#2020067197 and #2020080670). *Id.* at 9, 14.

## STATEMENT OF THE ISSUES

Defendants respectfully move for summary judgment on Plaintiff's claims and identify the issues presented. Resolving all evidence-based fact disputes in Plaintiff's favor:

1.   Whether any defendant violated the Eighth Amendment by demonstrating deliberate indifference to Plaintiff's need for protection stemming from conditions that objectively posed a substantial risk of serious harm.

2.   Whether Plaintiff has overcome the defendants' qualified immunity.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[5]

On October 1, 2019, while Plaintiff was housed the George Beto 1 Unit, he initiated an OPI based on concerns about potential violence. Appx.007. He was removed from the General Population (GP) during the investigation and interviewed by Lieutenant McBride (a non-party). Appx.004; Appx.007. In the written statement he submitted the next day, Plaintiff alleged that he was "being targeted by Blood and Crip gang members" because he "was affiliated in the world 20 years ago." Appx.005. He alleged that he was being threatened by unnamed Blood gang members in the prison. *Id.* In his investigation summary, Lieutenant McBride noted that Plaintiff's allegations were "all the information [he] has to substantiate his life being in danger." Appx.007.

---

[5] A redacted version of Movants' Appendix is attached to the motion. Because some summary judgment evidence includes confidential medical records, the unredacted version is filed under seal accompanying a correspondence motion.

On October 4, 2019, Plaintiff was interviewed again as part of the Safe Prison/PREA program, this time by a Security Threat Group (STG) correctional officer, who concluded that "no evidence was obtained during [his] investigation to corroborate [Plaintiff's] allegations of being targeted by multiple offenders on the Beto Unit." Appx.010.

On October 5, 2019, Assistant Warden Wheat concluded his investigation review, marked the investigation as complete, and forwarded it to Unit Classification Committee ("UCC") for their review and recommendation. Appx.008. On October 9, 2019, UCC concluded that Plaintiff's claim of violence and threat of violence had been substantiated and recommended a unit transfer. *Id.* The UCC explained its decision to recommend a unit transfer as (1) "[d]ue to prior weapons found on [Plaintiff] in relation to [Plaintiff] feeling as though [his] life was in danger"; (2) "[d]ue to [Plaintiff's] willingness to harm offenders and potential staff on Beto Unit makes him a risk as well as Beto staff and offenders." *Id.* The UCC then faxed the transfer request form and accompanying documentation to the Chairman of the State Classification Committee ("SCC").[6] Appx.003. On November 4, 2019, the SCC denied the requested unit transfer. Appx.012. Commenting on the decision, the SCC Chairman explained that "the investigation merely reiterates offender's claim" and "both the investigator and STG staff could not find any evidence to support offender's allegations." *Id.*

---

[6] The SCC is "[a] central administrative classification committee that makes final decisions with regards agency-wide issues and unit classification committee recommendations." TDCJ Offender Orientation Handbook at 7 (internal pagination), publicly accessible at https://tinyurl.com/OffenderHandbook (last accessed November 14, 2022). The Court can take judicial notice of this information. *Ali v. Stephens*, 822 F.3d 776, 782 n.5 (5th Cir. 2016) ("We have previously taken judicial notice of the [TDCJ Offender Orientation Handbook], and we do so here.").

Months later, on January 19, 2020, an assault occurred. According to Plaintiff's account of the events, he left from the dinner chowhall and went to the dayroom. Appx.014. There, he was watching television while waiting to be racked up when, at around 4:00 PM, an inmate nicknamed "KJ" approached Plaintiff and struck him several times. Appx.014; Appx.023. Plaintiff fell to the floor and was hit again while getting to his knees. Appx.023. He got up and officer Hanna opened the door to rack up. *Id.* Plaintiff went to his cell, took some pain pills, and went to sleep. *Id.*

According to Plaintiff's grievance (#2020067197),[7] the day following the assault, Plaintiff spoke with an officer (not a defendant) and reported the assault. Appx.014. The officer told him it was "okay to write a grievance," so Plaintiff did. *Id.* Plaintiff's grievance described the attack and requested (1) "[t]hat he get some medical attention for [his] jaw ASAP" (2) "that the inmate that caused it be charged for it," and (3) "[t]hat officer Hanna be dealt with according to the TDCJ employee discipline." Appx.015.

The Beto Unit Grievance Office received Plaintiff's grievance (#2020067197) on January 23, 2020, and took it seriously. Appx.015. In internal emails, the Grievance Office characterized it as an "emergency grievance," and an OPI quickly followed. *See* Appx.029–30. According to the OPI investigation summary, on January 23, 2020, at approximately 1:00 PM (1300 hours), Plaintiff informed a lieutenant (non-party) of the inmate assault. Appx.025. The lieutenant escorted Plaintiff to the unit infirmary for a medical screening. *Id.*; *see also* Appx.033–38. According to his medical charts, Plaintiff described pain in his left upper jaw and rated that pain as a 4 out of 10.

---

[7] Although signed by Plaintiff on January 20, 2020, the grievance is repeatedly stamped "Jan 23 2020," creating some ambiguity about the timing of its submission and processing. *See* Appx.014–15.

Appx.035. The medical staff prescribed medication to deal with discomfort or itching. Appx.037.

The staff also ordered an x-ray of the jaw.[8] Appx.036.

Plaintiff was moved to a different wing until the conclusion of the OPI investigation.

Appx.025. Although Plaintiff's lawsuit complains that unit transfers were insufficient, the OPI

offender statement that Plaintiff wrote and signed four days after the January 19, 2020, assault

specifically circled "Unit Transfer" as the action Plaintiff thought should be taken to solve his

problem. Appx.023.

Appx.023 (excerpt). Notably, Plaintiff did not suggest "Protective Custody" as an action that

should be taken. *See id.*

---

[8] While Plaintiff filed subsequent grievances regarding his medical care—complaining, for example, that the doctor told him that his jaw was not broken—no medical practitioners have been named as defendants in this lawsuit. *See* Appx.040–41.

The OPI investigating officer (a lieutenant, non-party) concurred with Plaintiff's assessment. Appx.025. The officer suggested that "due to the injuries that were noted," "a unit transfer may help solve [Plaintiff's] problem" by separating him from his assailant. Appx.025. Shortly thereafter, a captain at the unit interviewed Plaintiff and concurred with Plaintiff's request—and the lieutenant's assessment—that Plaintiff should be transferred off the unit for his safety. Appx.019.

On February 26, 2020, the SCC approved the unit transfer, which Plaintiff's OPI statement circled as the suggested action to solve his problem. *Compare* Appx.023, *with* Appx.017, Appx.020. Two days later, Plaintiff departed the Beto 1 Unit. *Id.* Assistant Warden Burson responded to Plaintiff's grievance by acknowledging the investigation and the OPI and noting that Plaintiff's allegations regarding the assault had been substantiated. Appx.071. Because Plaintiff had already departed the Beto 1 Unit by that time, Assistant Warden Burson determined that no further action was warranted. *Id.* Plaintiff never filed a Step 2 grievance.

While all this was going on, on February 21, 2020, Plaintiff filed a second grievance (#2020080670). *See* Appx.040–52. In this grievance, Plaintiff complained that the doctor who treated his injuries on February 6, 2020, told Plaintiff that his jaw was not broken and refused to order an MRI (having already ordered x-rays). Appx.040. As the action requested, Plaintiff sought an MRI. Appx.041. A Senior Practice Manager investigated. Appx.043. Noting that an exam had been performed and x-rays completed, the Senior Practice Manager concluded that Plaintiff did not have the right to dictate his medical care and that, considering his unit change, if he had future medical concerns, he ought to submit a sick call at his new unit. Appx.041. Again, Plaintiff never filed a Step 2 grievance.

After February 28, 2020, Plaintiff never again (to-date) resided at the Beto 1 Unit where Defendants Assistant Warden Wheat and Assistant Warden Burson worked. His pleadings do not allege that he had any additional interactions or encounters with them after this timeframe. *See generally* Dkt. #27 at 8–15. For these Defendants, the statement of undisputed facts effectively ends when Plaintiff was transferred off the Beto 1 Unit, the action Plaintiff himself had suggested to solve his problem.

To address Plaintiff's allegations against Defendant Director Lumpkin, an additional statement is needed because Plaintiff's pleadings allege that he mailed two letters to Director Lumpkin on December 9 and December 30, 2021, requesting that he (Plaintiff) be put in safe keeping or protective custody. *See* Dkt. #27 at 7. Defense Counsel was unable to find evidence to support Plaintiff's allegation that he sent these two letters.[9] *See* Appx.053–68; Appx.079. But even if Plaintiff can create a fact dispute regarding whether he sent a letter in December 2021, steps were already being taken at that time to meet his safety concerns. Several months earlier, while at the Powledge Unit, Plaintiff filed a grievance (#2021134043) stating that he had been assaulted by an inmate on July 21, 2021. Appx.070. Per the response (written by a non-party), "[t]he issue raised within [his] grievance was processed in accordance with the safe prison program."

---

[9] At the beginning of December 2021, Plaintiff was housed in the Terrell Unit (R3). Appx.079. By December 20, 2021, however, he had been transferred to the Alfred Hughes (AH) Unit. *Id.* The Alfred Hughes mail unit was unable to find any record of Plaintiff sending a letter in December 2021 (and, to-date, Defense Counsel has been unable to obtain the Terrell Unit mail records). These acronyms are posted on the official government website for TDCJ on its Unit Directory. *See* TDCJ Unit Directory, publicly accessible at https://www.tdcj.texas.gov/unit_directory/index.html (last accessed November 10, 2022). The Court can take judicial notice of this information. *See* FED. R. EVID. 201(b) (permitting a court to take notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); FED. R. EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding."); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (Fifth Circuit taking judicial notice of Texas agency's website).

Appx.071. The "claim was of endangerment was investigated and the results forwarded to the UCC for review." *Id*. Upon review, the UCC recommended a unit transfer. *Id*. "Furthermore a notation was made on [Plaintiff's] record to not assign [him] to the same housing area as [the offender who attacked him]." *Id*.

Despite the unit transfer, Plaintiff filed a Step 2 grievance in March 2022. Appx.073–74. In this grievance, Plaintiff expressed his disagreement with his security treatment by TDCJ, arguing that transfers between different units were insufficient. *See id*. Plaintiff argued that rather than transferring him among different units, he should have been removed from general population. *See id*. The grievance response (by a non-party) indicated that TDCJ could not sustain Plaintiff's allegations of life endangerment (at the new unit) but that, if any time, Plaintiff felt he was being subjected to a clear and present danger from another inmate, he should notify a TDCJ ranking officer for immediate assistance. Appx.074.

Plaintiff filed another Step 1 Grievance (#2022046840) on December 30, 2021. Appx.085–86. In this grievance, Plaintiff indicated he had been threatened (but not actually assaulted) by his cellmate and requested to be placed in protective custody. *Id*. The grievance response indicated that Plaintiff had been recommended for a unit transfer and the SCC decision as pending. Appx.086. Internal correspondence indicates that Plaintiff was also told to talk to safe prisons post-transfer. Appx.090. The investigation into Plaintiff's grievance concluded that on December 24, 2021, Plaintiff assaulted another inmate by striking him in the head with a fan motor inside of a sock. Appx.095. After the assault, Plaintiff was interviewed and indicated he neither wanted an OPI nor was he willing to provide a written statement.[10] *Id*.; *see also* Appx.105–08 (Emergency

---

[10] Even if Plaintiff presents evidence to contest the contents of these reports, because he is not suing a defendant who was involved in these incidents, what matters is not the accuracy of the reports themselves

Action Center ("EAC") report). As a result of this incident, the UCC recommended transferring

Plaintiff to another unit "due to [Plaintiff] being the aggressor in a physical altercation w/ a weapon

with [a] confirmed member of the Tango Clique" to protect Plaintiff from retaliation:

Appx.112 (excerpt UCC History Form). In the subsequent disciplinary hearing, Plaintiff was

found guilty, resulting in a loss of recreation days, commissary days, and 200 lost good time days.

Appx.116; *see also* Appx.117–32 (additional disciplinary records). Plaintiff's custody level was also

downgraded to General Population 5 (G5) as a result of this incident:[11]

but rather what Director Lumpkin would have seen had he (hypothetically) reviewed the reports after
(hypothetically) receiving Plaintiff's letters.

[11] "General population Level 5 (G5) or (J5) custody refers to offenders who have assaultive or aggressive
disciplinary records.  G5 or J5 custody offenders shall live in cells.  They may not work outside the security
fence without direct,   armed supervision."  TDCJ Offender Orientation Handbook at 6 (internal
pagination), publicly accessible at https://tinyurl.com/OffenderHandbook  (last accessed November 14,
2022). The Court can take judicial notice of this information. *Ali*, 822 F.3d at 782 n.5.

Appx.111 (excerpt from UCC History Form). As for Plaintiff's grievance (#2022046840), the Step 2 investigation records indicate that Plaintiff had indeed already been recommended for a unit transfer for the current OPI and, in the opinion of the (non-party) investigator, "there was no need for protective custody to be recommended." Appx.081.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citation omitted). Once the movant bears its initial burden, the non-movant must identify admissible evidence that creates a fact issue. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

Where, as with qualified immunity, the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements

of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2004) (citation omitted). When the moving party has met its burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

## LEGAL BACKGROUND

### A.    42. U.S.C. § 1983

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal quotes omitted). "[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). "Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Here, the pleadings' references to Defendants' alleged deliberate indifference indicate an alleged Eighth Amendment violation. *Se* Dkt. #27 at 12–15.

### B.    Eighth Amendment: Failure to Protect

The Eighth Amendment's proscription against cruel and unusual punishment also affords inmates a measure of protection from injuries inflicted by other inmates. *Smith v. Wade*, 461 U.S.

30 (1983). But to establish an Eighth Amendment violation based on "failure to protect" theory, the plaintiff must show both (1) that he was incarcerated under conditions that objectively posed a substantial risk of serious harm and (2) that the correctional-officer defendant was deliberately indifferent to the need for protection. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To act with deliberate indifference "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835. Deliberate indifference is a stringent standard of fault, requiring the defendant to disregard a known or obvious consequence of his actions. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Deliberate indifference "cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001). It is "an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Prison officials are not liable if (1) "they were unaware of even an obvious risk to inmate health or safety," (2) "they did not know of the underlying facts indicating a sufficiently substantial danger," (3) "they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or (4) "they knew of a substantial risk to inmate health or safety . . . [and] responded reasonably to the danger, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844-45.

"Causation is the final element of a failure-to-protect claim." *Payne v. Collins*, 986 F. Supp. 1036, 1054 (E.D. Tex. 1997). There are two causation links at issue. *Id.* The plaintiff must first demonstrate a connection between (1) the defendant prison official's deliberately indifferent acts and omissions and (2) the substantial risk of serious harm. *Id.* And, second, the plaintiff must

demonstrate that (1) the substantial risk of serious harm to which the defendant prison official was deliberately indifferent was (2) the risk that caused the plaintiff's injury. *Id.* "To prove these two connections, the plaintiff must do more than merely show that the defendant prison official had the means to correct a constitutional infirmity." *Id.* (internal quotations omitted).

## C.    Qualified Immunity

Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

The qualified immunity analysis has two steps, which can be taken in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "First, [the Court should] assess whether a statutory or constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios,* 381 F.3d 391, 395 (5th Cir. 2004). Second, the Court should "determine whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

"In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

## ARGUMENTS & AUTHORITIES

As described in more detail in the statement of undisputed facts, over the past few years, Plaintiff has submitted multiple OPI requests, which were investigated, and which prompted the reviewing officials to take action in response, including—on at least one occasion—the action specifically requested by Plaintiff, *i.e.* transferring him to a different unit. *See, e.g.*, Appx.014–31; Appx.070–72. Plaintiff contends that Defendants should have taken *different* actions to protect him such as changing his custody status rather than moving him to different units. *See* Dkt. #27 at 12. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84–85 (1987). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). An inmate's "disagreement with prison officials regarding his custodial status does not establish a constitutional violation." *Thieleman v. White*, Civ. A. No. 6:16-cv-1300, 2019 WL 3956279, at *3 (E.D. Tex. 2019) (Mitchell, M.J., report & rec.), adopted 2019 WL 3943897. As set forth below, taking the evidence in the light most favorable to Plaintiff, he cannot demonstrate that Movants violated the Eighth Amendment, much less overcome their qualified immunity.

### A.   Director Lumpkin

#### 1.   Director Lumpkin did not violate the Eighth Amendment.

Director Lumpkin is entitled to summary judgment because the evidence in the light most favorable to Plaintiff does not establish both (1) that he was incarcerated under conditions that

objectively posed a substantial risk of serious harm and (2) that Director Lumpkin exhibited deliberate indifference to Plaintiff's need for protection. *See Farmer*, 511 U.S. at 834. Here, the evidence in the light most favorable to Plaintiff does not establish Director Lumpkin's deliberate indifference. Even if Plaintiff could establish a material fact dispute on both elements of his claim, the claim would still be ripe for dismissal because he cannot overcome Director Lumpkin's qualified immunity from suit. *See* Dkt. #17 at ¶9 (answer pleading qualified immunity).

Plaintiff contends Director Lumpkin is liable for inmate assaults because Plaintiff has been transferred to six different units and continuously placed in general population rather than being placed in protective custody. Dkt. #27 at 12. There is no evidence that Director Lumpkin was personally involved in any decision regarding Plaintiff's classification. Rather, the evidence shows that a combination of the UCC and SCC made those decisions. *See*, *e.g.*, Appx.012 (SCC reviewing and overruling a UCC recommendation based on an independent review of the underlying OPI investigation); Appx.111 (downgrading Plaintiff's custody level to G5 because of his disciplinary conviction for assault with a weapon); Appx.134 (Inter-Office Communications letter addressed to Plaintiff explaining the outcome of the UCC's review and identifying the committee members, who did not include Director Lumpkin).

Lacking evidence of Director Lumpkin's personal involvement in his classifications, Plaintiff can rely only on his allegation that he put Director Lumpkin on notice of his alleged need for protection by sending him two letters on December 9 and December 30, 2021. *See* Dkt. #27 at 7. Defense Counsel could find no evidence that such letters were sent; indeed, the mail logs point to the contrary conclusion. "[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir.

2013) (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)). A non-moving party must bring forth "evidence sufficient for a rational trier of fact" to find in their favor. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citation omitted).

But for the sake of argument, should Plaintiff be able to produce some admissible evidence that (1) Director Lumpkin received the December 2021 letters from Plaintiff, (2) that Director Lumpkin read the letters, and (3) these letters contained the same general substance as Plaintiff's December 2021 grievance, that hypothetical factual scenario would still not be material because its resolution would not affect the outcome of this action. *See Levy Gardens Partners 2007, L.P.*, 706 F.3d at 628. To conclude otherwise would effectively convert a stringent standard of fault into respondeat superior liability. As this Court recently put it when confronting a similar allegation regarding Director Lumpkin's predecessor: "Plaintiff sending [Director] Davis a 'personal notice of legal liability' is not akin to Davis taking any actual personal action in depriving Plaintiff of a constitutional right." *McWherter v. Davis*, Civ. A. No. 6:19-CV-00383, 2020 WL 5638714, at *6 (E.D. Tex. 2020) (Love, M.J., report & rec.), adopted 2020 WL 5632675. This Court concluded that such allegation was insufficient to state a plausible claim for deliberate indifference. *Id.* The same applies equally here.

Making the unwarranted inferences that Director Lumpkin received, reviewed, and investigated Plaintiff's allegations in December 2021, such inferences *still* would not give rise to a culpable mental state. Had Director Lumpkin investigated in December 2021, he would have learned that TDCJ was already responding reasonably to Plaintiff's concerns. Had Director Lumpkin investigated in late December 2021 or shortly thereafter, he would have discovered that (1) Plaintiff had recently assaulted another inmate (for which he was convicted), and (2) TDCJ had

then transferred Plaintiff to a different unit to protect him from retaliation for the assault and had placed him in more restrictive custody. *See* Appx.086; Appx.111–12. In short, Director Lumpkin would have learned that TDCJ had investigated Plaintiff's claims of endangerment, processed them in accordance with TDCJ policy and the safe prison program, and then took action to mitigate the risk to Plaintiff's safety. *See*, *e.g.*, Appx.071; Appx.074. Even assuming Director Lumpkin received letters, reviewed the relevant records, and then took no further action, he would still not be liable for an Eighth Amendment violation.

The facts of this case are strikingly similar to those presented in *Thieleman v. White*, Civ. A. No. 6:16-cv-1300, 2019 WL 3956279, at *3 (E.D. Tex. 2019) (Mitchell, M.J., report & rec.), adopted 2019 WL 3943897. In that case, the inmate sought a preliminary injunction based, in relevant part, on a failure-to-protect theory. *See id.* The district court concluded that the plaintiff had not demonstrated substantial likelihood of success on the merits because, "though harm may not have been averted, prison officials attempted to secure his safety" by conducting "numerous Offender Protection Investigations" and "transfer[ring] him to a variety of prison units throughout Texas." *Id.* While, as here, the plaintiff "stresse[d] how prison officials refuse to place him in protective custody or safekeeping status," the Court held that this did not amount to a likely Eighth Amendment violation. *Id.*

Likewise, in *Parker v. Currie*, the Fifth Circuit concluded that officials were not deliberately indifferent when they repeatedly moved the inmate-plaintiff from unit to unit in an attempt to keep him away from what he perceived to be life-threatening danger, despite their refusal to remove him from the general population. 359 F. App'x 488, 490 (5th Cir. 2010) (unpublished). The Fifth Circuit concluded that the inmate's appeal was frivolous even if the harm he faced was substantial

because he did "not allege that prison officials acted in ways that evince 'obduracy and wantonness,' or that rise above simple negligence." *Id.*

In sum, Director Lumpkin was not aware of a substantial, objective risk to Plaintiff's health or safety, but had he been aware and had he investigated, he would have concluded TDCJ was already responding reasonably to the risk. *See Farmer*, 511 U.S. at 844–45. Plaintiff's Eighth Amendment claim against Director Lumpkin fails to meet any element but particularly falls short on deliberate indifference and causation. *See Payn*, 986 F. Supp. at 1053–54; *Thompson*, 245 at 459.

### 2.     Director Lumpkin is entitled to qualified immunity.

But even if there were a material fact dispute on the claim, Plaintiff still could not overcome Director Lumpkin's qualified immunity. Director Lumpkin's actions did not violate a clearly established constitutional right of which a reasonable person would have known. As the purported constitutional violation does not fall within the "rare" case "where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018), Plaintiff must identify precedent demonstrating that Director Lumpkin's conduct was clearly prohibited based on his particular circumstances. *See id.* at 589–90. While qualified immunity does "not require a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016) (per curiam)).

Director Lumpkin anticipates that Plaintiff cannot meet his burden because, if anything, the controlling authorities strongly support the position that his conduct did *not* violate the Eighth

Amendment. And finally, even if Director Lumpkin's "actions violated a clearly established constitutional right," qualified immunity would still be appropriate because those "actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *See Brown*, 623 F.3d at 253 (5th Cir. 2010) (quoting *Collins*, 382 F.3d at 537). For all these reasons, Director Lumpkins respectfully asks the Court to grant his summary judgment motion and dismiss the claims against him with prejudice.

## B.   Assistant Warden Burson

Assistant Warden Burson is entitled to summary judgment because the evidence in the light most favorable to Plaintiff does not establish both (1) that he was incarcerated under conditions that objectively posed a substantial risk of serious harm and (2) that Burson exhibited deliberately indifference to Plaintiff's need for protection. *See Farmer*, 511 U.S. at 834. Here, the evidence in the light most favorable to Plaintiff does not establish Assistant Warden Burson's deliberate indifference to Plaintiff's need for protection. But even if Plaintiff could establish a material fact dispute on both elements of his claim, the claim would still be ripe for dismissal because he cannot overcome Assistant Warden Burson's qualified immunity from suit. *See* Dkt. #17 at ¶9 (answer pleading qualified immunity).

### 1.   Assistant Warden Burson did not violate the Eighth Amendment.

Plaintiff contends that Assistant Warden Burson violated the Eighth Amendment because Burson failed to protect him from an inmate assault on January 19, 2020. Dkt. #27 at 14. Plaintiff does not contend that Assistant Warden Burson witnessed the assault. *See id.* Rather, he rests his contention that Assistant Warden Burson was deliberately indifferent on his request for OPI and two grievances (#2020067197) and (#2020080670). *See id.* at 9, 14. Taking the evidence in the light most favorable to Plaintiff, his claim against Assistant Warden Burson falls short. Assistant

Warden Burson's primary involvement in the underlying events was authoring the grievance response to Plaintiff's grievance (#2020067197), which noted that "[a]n OPI was conducted," that Plaintiff was "approved for a unit transfer by SCC on 02/26/2020" and "departed the Beto unit on 02/28/20," and that "[n]o further action [was] warranted." Appx.015. Notably, a unit transfer is what Plaintiff's OPI offender statement requested. Appx.023. Plaintiff's other grievance (#2020080670) concerned the quality of the healthcare he received following the attack and does not even implicate Assistant Warden Burson. *See* Appx.040–41. The undisputed evidence does not support the legal conclusions that Plaintiff was incarcerated under conditions that objectively posed a substantial risk of serious harm and that Assistant Warden Burson exhibited deliberate indifference to Plaintiff's need for protection.

In *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), the inmate-plaintiff argued that several prison officials were deliberately indifferent to his safety by failing to protect him from repeated sexual assaults over an 18-month period. In that case, the Fifth Circuit first assessed the potential liability of the non-UCC supervisory defendants. *See id.* at 526. The Court acknowledged that, "given the size of the operation that [the supervisory defendants] oversee, they cannot be expected to intervene personally in response to every inmate letter they receive." *Id.* The supervisory officials' responses to the plaintiff's concerns about his safety had been to "refer[] the matter for further investigation or tak[e] similar administrative steps," which the Fifth Circuit deemed "a reasonable discharge of their duty to protect the inmates in their care." *Id.* For those UCC defendants who took actions such as "ordering further investigation or separating [the plaintiff] from a particular inmate who had been threatening him," the Fifth Circuit further concluded that

while those actions may have been "unavailing," they "may well have been reasonable methods of addressing the risk that [the plaintiff] faced." *Id.*

Here, Assistant Warden Burson assessed a grievance in which Plaintiff expressed concerns about his safety based on an inmate assault. Appx.014. Burson concluded that separating Plaintiff from his assailant by transferring him to another unit would address those concerns. Appx.015. Plaintiff may have experienced one or more inmate assaults at subsequent units. Indeed, he was found guilty of perpetrating one himself. Appx.116. But this does not demonstrate that Assistant Warden Burson had a culpable mental state when he reviewed Plaintiff's grievance in February 2020 and concluded that granting Plaintiff's request for a unit transfer was sufficient to address the risks that Plaintiff faced. *Compare* Appx.015, *with* Appx.023. Indeed, a unit transfer to separate an inmate from his assailant is precisely the type of risk-addressing method that the Fifth Circuit has described as reasonable under similar conditions. *See Johnson*, 385 F.3d at 526. "The most diligent prison administrators cannot guarantee complete safety." *Id.* "Prisons are inherently dangerous institutions, and decisions concerning safety, order, and discipline must be, and always have been, left to the sound discretion of prison administrators." *Lewis v. Casey*, 518 U.S. 343, 391 (1996) (Thomas, J., concurring). "[A]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).

The evidence in the light most favorable to Plaintiff does not demonstrate that Assistant Warden Burson acted with deliberate indifference because the evidence does not demonstrate that Burson knew of and disregarded an excessive risk to Plaintiff's safety. *Farmer*, 511 U.S. at 837. And just as an inmate's disagreement with a physician about his "medical treatment does not state

a claim for Eighth Amendment indifference to medical needs," *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997), so too Plaintiff's disagreement with a prison official about his penological treatment does not state a claim for Eighth Amendment deliberate indifference to safety needs. When measured against the "extremely high standard" for deliberate indifference, *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020), the evidence regarding Assistant Warden Burson's conduct and mental state falls short.

### 2.   Assistant Warden Burson is entitled to qualified immunity.

Assuming for the sake of argument Plaintiff can identify admissible evidence sufficient to create an issue of material fact regarding the purported Eighth Amendment violation, Assistant Warden Burson is nevertheless entitled to summary judgment based on qualified immunity. Taking the evidence in the light most favorable to Plaintiff, Assistant Warden Burson's actions neither amounted to a clear violation of the Eighth Amendment nor were they objectively unreasonable. *See Brown*, 623 F.3d at 253; *Wesby*, 138 S. Ct. at 589–90. "[J]udged in light of the circumstances that confronted [Assistant Warden Burson in early 2020], without the benefit of hindsight," Plaintiff cannot identify evidence "sufficient to demonstrate that no reasonable officer could have believed that [Burson's] actions were proper." *See Brown*, 623 F.3d at 253. As such, Assistant Warden Burson respectfully asks the Court to grant his summary judgment motion and dismiss the claims against him with prejudice.

### C.   Assistant Warden Wheat

### 1.   Assistant Warden Wheat did not violate the Eighth Amendment.

Assistant Warden Wheat is entitled to summary judgment because the evidence in the light most favorable to Plaintiff does not establish both (1) that he was incarcerated under conditions that objectively posed a substantial risk of serious harm and (2) that Wheat exhibited deliberately

indifference to Plaintiff's need for protection. *See Farmer*, 511 U.S. at 834. Here, the evidence in the light most favorable to Plaintiff does not establish Assistant Warden Wheat's deliberate indifference to Plaintiff's need for protection. But even if Plaintiff could establish a material fact dispute on both elements of his claim, the claim would still be ripe for dismissal because he cannot overcome Assistant Warden Wheat's qualified immunity from suit. *See* Dkt. #44 at ¶6 (answer pleading qualified immunity).

Plaintiff rests Assistant Warden Wheat's purported liability upon similar contentions as those presented against Assistant Warden Burson. *Compare* Dkt. #27 at 9, 14, *with id.* at 10–11, 15. But Assistant Warden Wheat's only real involvement was to review Plaintiff's October 2019 OPI request, confirm that the investigation file was complete, and forward it to the UCC for their review. *See* Appx.008. He did not make any decisions regarding Plaintiff's classification or unit transfer. *See id.* The Fifth Circuit has held that "responding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's proactive duties under the Eighth Amendment." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006) (quoting *Johnson*, 385 F.3d at 526). And that is exactly what Assistant Warden Wheat did here.

Plaintiff lacks evidence sufficient to create a material fact dispute regarding Assistant Warden Wheat's purported deliberate indifference to an objectively substantial risk of serious harm. *See Farmer*, 511 U.S. at 834. "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the [officials] were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). Here, there is no evidence that Assistant Warden Wheat was both "aware of facts from which the inference could

be drawn that a substantial risk of serious harm [to Plaintiff] exists, and . . . also dr[ew] the inference." *Farmer*, 511 U.S. at 835. And given the dearth of evidence regarding his involvement beyond appropriately forwarding the October 2019 OPI investigation to the next stage of review, Plaintiff also lacks evidence that Assistant Warden Wheat's actions or inactions caused any injury in this case. *See Payne*, 986 F. Supp. at 1054. Even viewing this evidence in the light most favorable to Plaintiff, no reasonable jury could find Assistant Warden Wheat liable for a violation of the Eighth Amendment.

### 2.   Assistant Warden Wheat is entitled to qualified immunity.

Assuming for the sake of argument Plaintiff can identify admissible evidence sufficient to create an issue of material fact regarding the purported Eighth Amendment violation, Assistant Warden Wheat is nevertheless entitled to summary judgment based on qualified immunity. Taking the evidence in the light most favorable to Plaintiff, Assistant Warden Wheat's actions neither amounted to a clear violation of the Eighth Amendment nor were they objectively unreasonable. *See Brown*, 623 F.3d at 253; *Wesby*, 138 S. Ct. at 589–90. If anything, the law is clearly established that Wheat did *not* violate the Eighth Amendment. *See Longoria*, 473 F.3d at 594. As such, Assistant Warden Wheat respectfully asks the Court to grant his summary judgment motion and dismiss the claims against him with prejudice.

### PRAYER

For all these reasons, Movants Director Lumpkin, Assistant Warden Burson, and Assistant Warden Wheat respectfully ask the Court to grant their motion for summary judgment and dismiss the claims against them with prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
Deputy Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Benjamin L. Dower*
**BENJAMIN L. DOWER**
Assistant Attorney General
Special Litigation Counsel
Law Enforcement Defense Division
State Bar No. 24082931

Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 936-2109 Fax No.
Benjamin.Dower@oag.texas.gov

**ATTORNEYS FOR DIRECTOR LUMPKIN,
ASSISTANT WARDEN BURSON, AND
ASSISTANT WARDEN WHEAT**

## NOTICE OF ELECTRONIC FILING

I, Benjamin L. Dower, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true and correct copy of the above and foregoing, **Defendants' Motion for Summary Judgment**, in accordance with the Electronic Case Files System of the Eastern District of Texas, Tyler Division on November 21, 2022.

*/s/ Benjamin L. Dower*
**BENJAMIN L. DOWER**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, Benjamin L. Dower, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing, **Defendants' Motion for Summary Judgment**, has been served by placing it in United States mail, on November 21, 2022, addressed to:

Chico Nakia Curry, TDCJ #01864110          *Via CM/RRR No. 7021 2720 0002 0452 6934*

Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
**Plaintiff** *Pro se*

*/s/ Benjamin L. Dower*
**BENJAMIN L. DOWER**
Assistant Attorney General