IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

CHICO NAKIA CURRY,                    §

v.                                    §           CIVIL ACTION NO. 6:22cv022

DIRECTOR BOBBY LUMPKIN, ET AL.        §

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Chico Nakia Curry, an inmate confined in the Texas prison system, proceeding *pro se* and *in forma pauperis,* brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the lawsuit.

Procedural History

Plaintiff began the lawsuit by filing an original complaint on January 8, 2022.[1] (Dkt. #1). He sues Defendants Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ-CID) Director Bobby Lumpkin, Laurey [Lorie] Davis, Nicholas W. Hannah (now known to be Zachary Hannah), Assistant Warden T. Burson, and Assistant Warden Unknown Wheat, in

_____

[1] Under the "prison mailbox rule," a *pro se* prisoner's pleading is deemed to have been filed on the date that the prisoner submits the pleading to prison authorities for mailing. *Causey v. Cain*, 450 F.3d 601, 604 (5th Cir. 2006) (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)). Although the Clerk of the Court filed Plaintiff's Original Complaint on January 21, 2022, a review of his Original Complaint shows that the complaint was signed and dated on January 8, 2022. The Court assumes the complaint was placed in the prison mail system on January 8, 2022, the date on which Plaintiff signed the complaint.

their individual capacities only. He alleges Defendants were deliberately indifferent to his conditions of confinement because they failed to protect him from physical and sexual assault by other inmates and Blood gang members, despite his requests for protective custody or safekeeping.

On June 2, 2022, Plaintiff moved for leave to file an amended complaint. (Dkt. ##15, 16). The Court granted Plaintiff's motion to file an amended complaint within 30 days of the Order. (Dkt. #20). Plaintiff filed his first amended complaint on August 8, 2022. (Dkt. #27).

On October 19, 2022, Plaintiff filed a motion to amend his amended complaint. (Dkt. #62). He sought to dismiss Nicholas Hannah and substitute Zachary Hannah. He did not attach the proposed amended complaint to his motion.

On November 7, 2022, he moved for leave to file a supplement to his amended complaint. (Dkt. ##67, 68). Plaintiff learned from Defendants' disclosures that he had named the wrong Officer Hannah. He sought leave to dismiss Nicholas Hannah and substitute Zachary Hannah in his place. The Court granted Plaintiff's motion to supplement his amended complaint (Dkt. #62) and his Motion for Leave to Amend Complaint (Dkt. #67). (Dkt. #102).

Plaintiff moved for leave to file a second amended supplemental complaint. (Dkt. ##81, 82). The Court granted the motion, and the second amended supplemental complaint became the operational supplemental complaint. (Dkt. #110). The Court notes that an amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). The amended complaint (Dkt. #27) and the second supplemental complaint (Dkt. #82) are the operative complaints in this lawsuit.

Before the Court is Defendants Lumpkin, Burson, and Wheat's Motion for Summary Judgment (Dkt. #78) on the merits. Defendants contend that Plaintiff failed to state a claim of deliberate indifference against each one and that they are each entitled to qualified immunity. Plaintiff filed a response in opposition. (Dkt. #93). Defendants filed a reply to Plaintiff's response. (Dkt. #94). Plaintiff filed a sur-reply. (Dkt. #97).

Plaintiff's Claims

Plaintiff alleges that on January 19, 2020, while at the Beto Unit, Officer Zachary Hannah was present in the dayroom while a gang member beat Plaintiff to the floor with a padlock held in the gang member's hand. Plaintiff asserts that Defendant Hannah did nothing to stop the assault. When the assault was over, Defendant Hannah merely told all involved to go to their cells and failed to obtain any medical attention for Plaintiff's injuries. (Dkt. #68, p. 6). Plaintiff infers that Defendant Hannah failed to report the assault to his superiors or file an incident report regarding the assault. He asserts that he suffered broken bones, fractures to the face, nose, and head, blunt trauma, concussion, facial injuries, mental anguish, and pain and suffering from the assault. (Dkt. #68, p. 7).

He contends that TDCJ-CID Director Bobby Lumpkin was placed on official notice of the numerous assaults and hospitalizations that Plaintiff suffered at the hands of gang affiliated inmates at different units. Plaintiff states that two letters were mailed to Director Lumpkin on December 9, 2021, and December 30, 2021, by certified mail. He also declares that he filed a Step 1 grievance against Director Lumpkin for failing in his legal duty to ensure the physical and mental safety of Plaintiff. Plaintiff further alleges that Director Lumpkin failed to uphold his duties by

3

ignoring the two letters and Plaintiff's request for help to be placed in safekeeping or protective custody to protect him from further assaults.

He alleges Assistant Wardens Burson and Wheat were each placed on official notice by an Offender Protection Investigation, along with Grievance numbers 20200671971 and 2020080670, regarding Plaintiff's need for protection. He asserts Wardens Burson and Wheat failed to take any action to protect Plaintiff from aggravated assault from other inmates and gang members. Plaintiff contends that he was attacked and suffered physical injuries as a result of the assaults. He asserts that Defendants failed to protect him from several inmate-on-inmate physical and sexual assaults and that they violated his right to safety under the Eighth Amendment by being deliberately indifferent to a substantial risk to his safety.

Plaintiff seeks $100,000 from each defendant for compensatory damages, and $150,000 from each defendant for punitive damages. He seeks an aggregated amount of $1,000,000, plus pre- and post-judgment interest. (Dkt. #68, p. 8). Plaintiff also requests nominal damages. (*Id*.). He further seeks declaratory relief, and prospective injunctive relief in the form of TDCJ being ordered to conduct a proper Offender Protection Investigation and to transfer Plaintiff to protective custody or safekeeping unit for the remainder of his sentence. (Dkt. #68, p. 9).

<u>Defendants' Motion for Summary Judgment</u>

In their Motion for Summary Judgment (Dkt. #78), Defendants Lumpkin, Burson, and Wheat[2] contend that TDCJ investigated Plaintiff's offender protection requests, and after Plaintiff

---

[2] Defendant Zachary Hannah is not a movant in the summary judgment motion before the Court.

was assaulted in January 2020, TDCJ took action to minimize the risk to Plaintiff's safety by transferring him to different prison units, away from the threats he identified.[3] On February 26, 2020, the State Classification Committee approved a unit transfer for Plaintiff. (Dkt. #78-1, p. 20). Plaintiff departed the Beto Unit on February 28, 2020. (Dkt. #78-1, p. 21).

Defendants further state that the summary judgment evidence shows that each of the three defendants here have limited connection to Plaintiff's requests for protection. They further contend that they are entitled to qualified immunity because their actions were objectively reasonable. In support of their summary judgment motion, Defendants attach the following:

- Plaintiff's TDCJ Offender Protection Investigations for October 2019, with a business records affidavit, bate stamp ##002 to 010;

- Plaintiff's TDCJ State Classification Committee (SCC) Records, with business records affidavit, November 4, 2019, bate stamp ##009 to 012;

- Plaintiff's Grievance No. 2020067187, with grievance investigation, dated January 2020, with business records affidavit, bate stamp ##013 to 031;

- Plaintiff's TDCJ Medical Records, January 2020, with business records affidavit, bate stamp ##032 to 038;

---

[3] As noted by the Fifth Circuit in *Moore v. Lightfoot*, 286 F. App'x 844, at *4 fn.2 (5th Cir. 2008), TDCJ–CID has a procedure to investigate and evaluate life endangerment claims. The complaint is first logged with the unit classification office in the offender protection log. The complaint is then assigned to a ranking officer to conduct an investigation, which, when completed, is returned to the unit classification office. The unit classification office then sets the claim for a hearing before the next available Unit Classification Committee (UCC).

A UCC consists of three voting members, who review and make recommendations regarding an inmate's custodial classification while at the unit. A recommendation to change an inmate's classification requires a majority vote. The UCC may recommend a housing change, placement in safekeeping, placement in protective custody, or a unit transfer. The State Classification Committee (SCC) has to approve the UCC's recommendations regarding safekeeping, protective custody, and unit transfers. Even in the face of an SCC denial, prison officials … have the power to assign inmates to transient housing or move them to safer parts of the unit.

- Plaintiff's Grievance No. 2020080670, with grievance investigation, February 2020, with business records affidavit, bate stamp ##039 to 052;

- Plaintiff's TDCJ Mail Records from the Hughes Unit, December 2021, with business records affidavit, bate stamp ##053 to 068;

- Plaintiff's TDCJ Grievances Nos. 2021140093 and 2021122274, with grievance investigations, July 2021–December 2021, with business records affidavit, bate stamp ##069 to 083;

- Plaintiff's TDCJ Grievance No. 2022046840, with grievance investigation, (December 2021), with business records affidavit, bate stamp ##084 to 103;

- Plaintiff's Emergency Action Center Report (December 2021), with business records affidavit, bate stamp ##104 to 108;

- Plaintiff's TDCJ Classification Records (December 2021–January 2022), with business records affidavit, bate stamp ##109 to 114;

- Plaintiff's TDCJ Disciplinary Records (December 2021–January 2022), with business records affidavit, bate stamp ##115 to 132; and

- Plaintiff's Interoffice Communication (IOC) (contained in Unit Classification Records) (January 12, 2022), with business records affidavit, bate stamp ##133 to 134.

<u>Plaintiff's Response</u>

In his Response in Opposition (Dkt. #93), Plaintiff contends that Defendants Lumpkin, Burson, and Wheat are not entitled to summary judgment. Plaintiff asserts that the Offender Protection Investigations (OPI) contain factual accuracies, and the conclusions of the investigations are the result of ineffective investigations by staff members. He further alleges for the first time that prior to the January 19, 2020 assault, that Defendant Burson denied his OPI in September 2019, placing him back on the same housing block (T-wing, 2-27 cell) with the same

gang members that were making threats toward him.[4] (Dkt. #93, p. 37). He also provides documentation of his numerous injuries from inmate-on-inmate assaults. In support of his response in opposition, Plaintiff attaches the following to his response:

- Two pages of an OPI for Plaintiff, dated October 2, 2019, bate stamp Appx.005-006;

- Two pages of an OPI for Plaintiff, dated January 25, 2020, bate stamp Appx. 025-026;

- September 23, 2020 Radiology Report for Plaintiff, October 21, 2020 Medical (Dkt. #93, p. 11);

- Plaintiff's Step 1 Grievance and investigative worksheets for Grievance No. 2020080670, dated February 21, 2020, bate stamp ##1088-89, 1093-1100;

- Plaintiff's five Nurse Sick Call requests from January 21, 2020 to February 1, 2020 (Dkt. #93, pp. 22-27);

- Two pages of Plaintiff's November 2, 2020 grievance investigation worksheet for Grievance No. 2021027662, bate stamp ##1150-1151;

- Six pages of Plaintiff's medical record from the Beto Unit from February 6-7, 2020, bate stamp ##1094-99;

---

[4] Plaintiff did not raise this previous September 2019 offender protection investigation in his amended complaint (Dkt. #27) or allege that Defendant Burson denied the September 2019 offender protection investigation. It is well established that "a claim that is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the Court," *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005); *accord Becker v. Nat'l Educ. Training Grp.*, No. 3:01–cv–1187–M, 2002 WL 31255021, at *6 (N.D. Tex. Oct. 7, 2002) (Lynn, J.). The Fifth Circuit has also held that "[t]he formal issues framed by the pleadings are not determinative on a motion for summary judgment and evidentiary matter may be developed, showing that the party moved against has presented genuine issues of material fact." *Eastland v. Tenn. Valley Auth.*, 553 F.2d 364, 370 (5th Cir. 1977); *see Marsh v. Austin–Fort Worth Coca–Cola Bottling Co.*, 744 F.2d 1077, 1079 n.4 (5th Cir. 1984) (per curiam) (stating in *dicta* that "'[t]he formal issues framed by the pleadings are not controlling on a motion for summary judgment; the court must consider the issues presented by the other material offered by the parties on the motion to determine whether the Rule 56 request should be granted'" (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721, at 43 (1983))). Thus, any new claims raised in Plaintiff's Response are not properly before the Court and cannot create a genuine issue of material fact precluding summary judgment. Evidentiary material, however, that further develops the allegations in Plaintiff's Amended Complaint is properly before the Court and is considered in determining whether triable issues of fact exist.

- Eight pages of Plaintiff's medical record from Freestone Medical Center for September 16-17, 2020, regarding Plaintiff's ankle (Dkt. #93, pp. 49-56);

- One page of medical note for Plaintiff, dated October 16, 2020 (Dkt. #93, p. 57);

- One page of Plaintiff's Boyd Unit Nursing Notes, dated November 30, 2020, (Dkt. #93, p. 58);

- Plaintiff's medical record from Huntsville Memorial Hospital, dated May 28, 2021 (Dkt. #93, pp. 59-78); and

- Hughes Unit Disciplinary Case, Disciplinary No. 20220077172, against Plaintiff for assault on another inmate, dated December 24, 2021 (Dkt. #93, pp. 79-99).

<u>Defendants' Reply and Plaintiff's Sur-Reply</u>

In their Reply to Plaintiff's Response (Dkt. #94), Defendants assert that: (1) Plaintiff's new factual assertions in his Response are unsworn; and therefore, not competent summary judgment evidence, (2) Plaintiff fails to raise any fact issues that demonstrate a genuine issue of material fact relevant to the issues before the Court, and (3) Plaintiff has failed to overcome Defendants' entitlement to qualified immunity. In his Sur-Reply (Dkt. #97), Plaintiff contends that unsworn statements should be considered due to the undisputed evidence presented by him. He urges the Court to set this matter for trial and allow a jury to weigh the evidence.

Summary judgment evidence must be probative and competent. Facts sworn to under penalty of perjury pursuant to 28 U.S.C. § 1746 have been recognized as competent summary judgment evidence. *See Hart v. Hairston*, 343 F.3d 762 n. 1 (5th Cir. 2003); *Hewitt v. Bradford*, 2016 WL 3254056 (5th Cir. 2016). Although Plaintiff's amended complaint was submitted under penalty of perjury by virtue of provisions in the preprinted section 1983 form, his subsequent pleadings were not submitted under penalty of perjury and do not constitute competent, probative

8

summary judgment evidence. *See Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) (holding that declarations and verified pleadings of a *pro se* prisoner that are dated and made on penalty of perjury constitute adequate summary judgment evidence); *see also Cantwell v. Sterling*, 788 F.3d 507, 509, n.1 (5th Cir. 2015) ("The ordinary rules of civil procedure are applicable in prisoner suits. Cantwell offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment."). Defendants are correct that Plaintiff's Response (Dkt. #94) is not sworn under penalty of perjury; therefore, the Court may not rely on the statements in the Response as summary judgment evidence.

Plaintiff attached additional documents to his Sur-Reply (Dkt. #97-1) in support of his Response in Opposition:

- Exhibit A – Medical notes for October 16, 2020 from Pearl Patient Chart Export-CMHC, while at the Boyd Unit; grievance investigation for Grievance No. 2020080670, active Medications List from 01/01/2020 to 01/31/2022;

- Exhibit B – Various medical notes regarding assault by three inmates on Plaintiff on the Boyd Unit in June 2020, and another assault that occurred in September 2020. Plaintiff was bitten on the elbow and his ankle was broken.

- Exhibit C – Incident review regarding May 28, 2021 assault at the Wynne Unit; and

- Exhibit D – Medical notes regarding treatment for assault and drug reaction at the Polunsky Unit.

The Court has reviewed the parties' exhibits and will address the parties' exbibits and arguments in the Discussion below as appropriate.

## Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247–48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle S. Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the

record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.

To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589–90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence."" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011).

"Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously." *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991) (citation omitted). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

Unserved and defaulting former officials are entitled to the "benefit from the appearing defendant's favorable summary judgment motion." *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *see also Bloch v. Samuels*, Civil Action No. H-04-4861, 2006 WL 2239016, at *9 (S.D. Tex. Aug. 6, 2006). To the extent that Defendants Lumpkin, Burson, and Wheat prevail on any

claim raised in their summary judgment motion, Defendant Lorie Davis is likewise entitled to the benefit of having such claim dismissed pursuant to Rule 56, FED. R. CIV. P.

Discussion and Analysis

I.    Plaintiff's failure to protect claim against Defendants

Plaintiff contends that Defendants failed to protect him from an assault by gang members and other inmates on the Beto Unit and other units. He admits that he was a gang member in his youth but had "laid down his flag" as he matured. He declares that he is not a gang member, and it is his refusal to return to gang membership that is causing his issues with gang members inside the various units on which he has been assigned. He alleges that Defendants knew and disregarded the dangers of placing him back into general population with the same inmates that were threatening him.

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994); *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). This duty, which is grounded in the Eighth Amendment's prohibition against cruel and unusual punishments, is nevertheless a limited one. *Farmer,* 511 U.S. at 832-34. The Eighth Amendment mandates "reasonable" safety, not "absolute" safety. *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998); *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir. 1999) ("We recognize at the outset that neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners."). Every injury suffered by one prisoner at the hands of another does not amount to a constitutional violation by prison officials responsible for a prisoner's safety. *Farmer,* 511 U.S. at 834. The substantial risk and need for

protection must be obvious to the custodial officials in order to trigger the inmate's Eighth Amendment rights, and prison officials are not required to guarantee that no attack ever will occur. *See Newton,* 133 F.3d at 308.

Even the fact that an inmate unquestionably sustained a serious injury is not sufficient to show that prison officials were deliberately indifferent. *Garza v. Biscoe*, No. 6:08-cv-130, 2009 WL 1174623, at *8 (E.D. Tex. April 29, 2009). The Fifth Circuit has held that complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act, even if such complaints could be valid under state law. *See Bowie v. Procunier*, 808 F.2d 1142 (5th Cir. 1987).

To prevail on a failure to protect claim, a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Farmer,* 511 U.S. at 832-34; *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 1999). A prison official is deliberately indifferent to a prisoner's safety where the official is aware of a substantial risk of harm to the prisoner but disregards that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 847; *Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir. 2002). To act with deliberate indifference, a prison official must be "subjectively aware" of the risk; that is, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. However, even if a prison official was subjectively aware of the risk, he may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Only deliberate indifference will suffice to state a failure to protect claim;

mere negligence is not sufficient. *Id.* at 837. The test for establishing deliberate indifference is one of subjective recklessness as used in the criminal law. *Id.* at 837.

The deliberate indifference standard is an extremely high standard to meet. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006); *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has declined to find deliberate indifference where an official "should have" inferred a risk posed to an inmate; the official must actually draw such an inference. *Adames v. Perez,* 331 F.3d 508, 514 (5th Cir. 2003).

A.  Plaintiff's claims against Defendant Lumpkin

Plaintiff is suing Bobby Lumpkin, the CID Director of TDCJ. Plaintiff states that he mailed two certified letters on December 9, 2021, and December 30, 2021, to Defendant Lumpkin placing him on notice of the numerous assaults he has endured by gang members and the many injuries that he has received. (Dkt. #27, p. 7). He alleges that Defendant Lumpkin ignored his letters and failed to place Plaintiff in safekeeping or protective custody.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Plaintiff does not allege that Defendant Lumpkin was aware of any threats by gang members or inmate-on-inmate assaults prior to the mailing of the two certified letters in December 2021. For any threat or inmate-on-inmate assault that occurred prior to December 2021, Plaintiff cannot show that Defendant Lumpkin was aware of facts of any substantial risk to Plaintiff's safety before that time. *Farmer,* 511 U.S. at 837

(explaining that a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

As to the two letters that Plaintiff mailed to Defendant Lumpkin in December 2021, Plaintiff also fails to demonstrate with summary judgment evidence (*see* Dkt. #93) that Defendant Lumpkin received the two letters or actually reviewed the letters. The mere fact that correspondence was sent to the CID Director of TDCJ does not give rise to liability based on purported "personal knowledge" of the matters contained within that correspondence.

> There are over 150,000 inmates in the Texas prison system, and thousands of grievances, letters, and complaints are written by inmates each month; the directors and administrators of the prison are not thereby liable for each, and every incident raised in these [letters] on the basis that that they have "personal knowledge" of every matter contained therein.

*Whitfield v. Clark*, No. 6:05-cv-246, 2005 WL 2840510, at *6 (E.D. Tex. Oct. 28, 2005) (not published). Plaintiff has not shown that his letters were personally received and reviewed by Bobby Lumpkin. His claim against Defendant Lumpkin is in reality a claim based upon Lumpkin's position as Director of the Correctional Institutions Division. Plaintiff has failed to set out any facts or establish with summary judgment evidence that Defendant Lumpkin "affirmatively participate[d] in the acts that cause[d] the constitutional deprivation ..." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir. 2008)).

Lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which do not apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal

involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivations, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Here, Plaintiff has not shown that Lumpkin was personally involved in a constitutional deprivation, or that wrongful conduct by Lumpkin was causally connected to a constitutional deprivation. Neither has Plaintiff shown that Lumpkin implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. It should be noted that no Fifth Circuit case has ever held that the Director of the Texas prison system can be held personally liable under Section 1983 because an inmate sent a letter to the Director's office complaining about their conditions of confinement. Reviewing the evidence in the light most favorable to Plaintiff, he has not established that Defendant Lumpkin was personally involved or that he was aware of a substantial risk of harm to Plaintiff and disregarded the risk. Defendant Lumpkin is entitled to summary judgment as a matter of law.

  B.  Plaintiff's claims against Defendants Burson and Wheat

Plaintiff alleges Defendants Burson and Wheat failed to protect him from an inmate assault on January 19, 2020. (Dkt. #27, p. 14). He does not allege that either defendant were aware of a substantial risk of a potential assault prior to January 19, 2020, in his amended complaint. (Dkt. #27). He also does not claim that either defendant witnessed the January 19, 2020 assault. Considering the evidence in the light most favorable to Plaintiff, he infers that each were placed on notice of his need for safekeeping or protective custody by the Offender Protection

Investigation [5] (OPI), along with Grievance Nos. 20200671971 and 2020080670, regarding Plaintiff's need for protection. (Dkt. #27, pp. 9, 14).

      1.   Grievance No. 2020067197

Upon review of the OPI and the two relevant grievances, Defendant Burson's apparent involvement was signing off on the Beto Unit's grievance response to the Step 1 of Grievance No. 2020067197. The grievance response noted that "[a]n OPI was conducted," that Plaintiff was "approved for a unit transfer by SCC [State Classification Committee] on 02/26/2020 and that Plaintiff "departed the Beto Unit on 02/28/2020," and that "[n] further action was warranted." (Dkt. 78-1, p. 15).

Based on the language contained in the grievance response of Grievance No. 2020067197, Plaintiff cannot show that Defendant Burson contained the requisite knowledge that a substantial risk of serious harm existed, or that he ignored such risk. *See, e.g., Hill v. Thomas*, 326 F. App'x 736, 737 (5th Cir. 2009) (affirming the dismissal of inmate's failure to protect claim when inmate failed to show defendants had knowledge of a substantial risk of serious harm to inmate prior to the incident at issue). Considering the evidence in the light most favorable to Plaintiff, the Court can infer that Defendant Burson was aware that Plaintiff had been separated from his attacker by a unit transfer; thereby resolving Plaintiff's issue at the Beto Unit. There would not be a need to

---

[5] Plaintiff does not identify which OPI investigation he asserts is the basis of his failure to protect claim against Defendants Burson and Wheat. Based on the allegations in his amended complaint (Dkt. #27), it is presumed that he is discussing the OPI related to the January 19, 2020 assault. In their summary judgment motion (Dkt. #78), Defendants discuss an OPI from September 2019, which Defendant Wheat had reviewed for completeness. In his Response in Opposition (Dkt. #93), Plaintiff discusses the same September 2019 OPI as Defendants but does not discuss the January 2020 OPI.

request housing in safekeeping or protective custody for Plaintiff at the Beto Unit as Plaintiff was being transferred away from the unit. See *Johnson v. Johnson,* 385 F.3d 503, 526 (5th Cir. 2004) (stating that actions such as "ordering further investigation or separating Johnson from a particular inmate who had been threatening him" may have been reasonable responses to Johnson's complaints of rape and torture by prison gangs); *see also Hare v. City of Corinth,* 135 F.3d 320, 328–29 (5th Cir. 1998) (finding that the defendant prison official was entitled to qualified immunity on a deliberate indifference claim because the protective measures he took-while unsuccessful-were "within the parameters of objective reasonableness"). Defendant Burson is entitled to summary judgment as a matter of law regarding Plaintiff's claim as it pertains to Grievance No. 2020067197.

Regarding Defendant Wheat, there is no indication in the summary judgment evidence presented by either side that Defendant Wheat had any personal involvement or connection to Grievance No. 2020067197. Defendant Wheat was not the grievance investigator or the signatory authority signing off on the grievance response. Plaintiff cannot maintain his claim that Defendant Wheat was aware of any risk and drew the inference that Plaintiff's safety was at substantial risk of serious harm as it relates Grievance No. 2020067197, and the January 19, 2020 assault.

### 2.  Grievance No. 2020080670

Plaintiff's other grievance, Grievance No. 2020080670, concerns his dispute with Dr. Wright as to whether he needed an MRI to determine if his cheekbone was broken or dislocated. (Dkt. #1, p. 14). Neither Defendant Burson nor Defendant Wheat signed the Beto Unit's Step 1 grievance response. The grievance is signed by Michael Sizemore, the Beto Unit's Medical

Department Practice Manager. There is no indication from the summary judgment evidence that either Defendant Burson or Wheat saw, investigated, or reviewed this grievance. (Dkt. 78-1, pp. 40-41). Plaintiff does not explain how either Defendant was aware of this grievance such that either would have been aware of a substantial risk of serious harm to Plaintiff's safety that required placement in safekeeping or protective custody while at the Beto Unit. Defendants are entitled to summary judgment on this claim.

### 3.  OPI Investigation(s)

As noted above, Plaintiff failed to clarify in his amended complaint (Dkt. #27), which OPI—October 2019 or January 2020—is the basis of his claim against Defendants Burson and Wheat. As discussed in Footnotes 4 and 5 above, the October 2019 OPI may not be treated as summary judgment evidence.

As a supervisor, Defendant Wheat reviewed the October 2019 OPI investigation file for completeness, and then forwarded it to the Unit Classification Committee (UCC) for their review. (Dkt. #78-1, p. 8). Defendant Wheat did not sit on the UCC that reviewed the October 2019 OPI investigation. (*Id.*). As noted previously, Plaintiff did not allege in his amended complaint (Dkt. #27) that Defendant Wheat's actions regarding the October 2019 OPI were constitutionally infirm. There is nothing in the October 2019 OPI that would place Defendant Wheat on notice that Plaintiff was at substantial risk of serious harm from "KJ," a Blood gang member, several months later in January 2020. Taking the evidence in the light most favorable to Plaintiff, there is nothing to show that Defendant Wheat was aware of a substantial risk of serious harm to Plaintiff and that he drew the inference. Defendant Wheat is entitled to summary judgment on this claim.

The Court notes that there is no summary judgment evidence or any factual allegations that draw a causal connection between the October 2019 OPI and Defendant Burson. Likewise, Defendant Burson is entitled to summary judgment as a matter of law.

Pertaining to the January 2020 OPI, Defendant Burson sat on the January 28, 2020 UCC as a UCC Chairperson, regarding the January 19, 2020 inmate assault. (Dkt. #78-1, p. 26). The UCC recommended that Plaintiff receive a unit transfer and be marked as Not For Same Unit (NFSU) as the Blood gang member who assaulted him. (*Id.*). The Fifth Circuit has held that "responding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's proactive duties under the Eighth Amendment." *Longoria*, 473 F.3d at 594 (quoting *Johnson*, 385 F.3d at 526).

The UCC, which included Defendant Burson, recommended that Plaintiff receive a unit transfer. While this administrative action resolved his issue at the Beto Unit, Plaintiff contends that he was not protected at his next unit of assignment as he was not placed in safekeeping or protective custody. Regardless, Defendant Burson is not liable because even if a prison official was subjectively aware of the risk, he may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* at 844. At the time the UCC voted to recommend a unit transfer for Plaintiff in January 2020, they would not have had any information that Plaintiff would have problems with gang members on his next unit of assignment. Defendant Burson is entitled to summary judgment as a matter of law.

The Court notes that there is no summary judgment evidence or any factual allegations that draw a causal connection between the January 2020 OPI and Defendant Wheat. Likewise, Defendant Wheat is entitled to summary judgment as a matter of law.

Taking the evidence in the light most favorable to Plaintiff, the record and facts as alleged by Plaintiff do not support a claim that Defendants Burson or Wheat was deliberately indifferent to Plaintiff's safety. There is no evidence to support a theory that any defendant knew or had reason to know that inmate "KJ" was going to attack Plaintiff , and Plaintiff has failed to allege any facts that any defendant was aware of a potential attack.

There is no record that Plaintiff ever notified any defendant that he was in danger of being attacked by inmate "KJ" prior to the January 19, 2020 assault. Plaintiff's claim that Defendants should have placed Plaintiff in safekeeping or protective because of a risk of being assaulted by inmates like "KJ" is without merit. There are simply no facts that any defendant was deliberately indifferent to Plaintiff's safety or ignored any fact shown to him indicating he was in substantial risk of serious harm.

Plaintiff has failed to allege any facts to suggest or establish that either Defendant had the requisite knowledge of a substantial risk to Plaintiff's safety on or before the January 19, 2020 assault. Plaintiff's Offender Protection Investigation records reflect that Plaintiff did not complain about "KJ" or his safety immediately prior to the January 19, 2020 assault. Although prison officials are required under the Constitution to protect the inmates under their care, the law recognizes that it is simply impossible to prevent all prison assaults, and therefore, an official will only be held liable if the plaintiff can demonstrate that the condition presented a substantial risk,

and that the defendant knew or would have known of the risk. *Farmer*, 511 U.S. at 837. Because Plaintiff cannot establish that Defendants Burson or Wheat knew or would have known of a substantial risk of harm, he fails to state cognizable failure to protect claim against Defendants Burson and Wheat. Defendants Burson and Wheat are entitled to summary judgment as a matter of law.

      C.  Any claim brought under a negligence theory fails to state a claim.

In his pleadings, Plaintiff states several times that it was negligence for prison officials to not house him in safekeeping or protective custody based on the severity of the injuries that he received from inmate assaults at various units. To the extent that Plaintiff is asserting a claim for negligence for failing to house him in safekeeping or protective custody, Plaintiff has failed to allege a constitutional claim. The law is clear that negligence is not actionable under section 1983. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). As the Fifth Circuit has observed, "'[I]t is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.'" *Price v. Roark*, 256 F.3d 364, 370 (5th Cir. 2001) (quoting *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir.1983)); *see also, Daniels v. Williams*, 474 U.S. 327, 331-34 (1986) (inmate slipped on pillow left on stairs).

II.    Qualified Immunity

Defendants argue that they are entitled to summary judgment based on qualified immunity. The doctrine of "qualified immunity" protects government officials from "liability for civil

damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 800 (1982). The qualified immunity inquiry determines whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (*i.e.,* the plaintiff in this case) bears the burden of rebutting the defense." *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity…").

"The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14,

2016) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity." *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

In the present case, as was discussed in the previous section, Plaintiff has not shown a violation of his constitutional rights. On this ground alone, Defendants are entitled to summary judgment based on qualified immunity. Plaintiff, likewise, failed to satisfy the second prong of the qualified immunity analysis. More specifically, he has not shown that the Defendants violated his constitutional rights of which a reasonable person would have known. Defendants are entitled to summary judgment based on both prongs of the qualified immunity analysis.

III.     Claims for Prospective Injunctive Relief

In his Second Amended Complaint, Plaintiff moves for declaratory relief and prospective injunctive relief for the Court to order TDCJ to conduct a proper Offender Protection Investigation and to transfer Plaintiff to protective custody or safekeeping for the remainder of his sentence.. For a permanent injunction to issue, a plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)). Here, the Court need not undertake an analysis of whether equitable relief is appropriate as Plaintiff did not prevail on the

merits of his claims. Plaintiff's request for declaratory and prospective injunctive relief should be denied.

<u>Recommendation</u>

It is therefore recommended that Defendants Lumpkin, Burson, and Wheat's Motion for Summary Judgment (Dkt. #78) be granted and the claims against them be dismissed with prejudice. To the extent that Plaintiff maintains that he has a claim against former Director Lorie Davis for deliberate indifference, Davis is entitled to the benefit of the dismissal of the claims against Defendants Lumpkin, Burson, and Wheat. It is recommended that Plaintiff's claims against Defendant Lorie Davis be dismissed with prejudice. Plaintiff's claims against Defendant Zachary Hannah should remain on the docket.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass*, 79 F.3d at 1430, *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 9th day of August, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE