UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:22-cv-00022

**Chico Nakia Curry,**
*Plaintiff*,

v.

**Director Bobby Lumpkin et al.,**
*Defendants*.

**OPINION AND ORDER**

This civil-rights lawsuit brought under 42 U.S.C. § 1983 arises out of a prisoner-on-prisoner assault at the Beto Unit of the Texas Department of Criminal Justice. Plaintiff Chico Nakia Curry, proceeding pro se and *in forma pauperis*, alleges that Zachary Hanna, the only remaining defendant and a former guard at the Beto Unit, failed to break up the assault and then, when the assault was over, failed to get medical attention for plaintiff's broken jaw. Plaintiff and defendant cross-moved for summary judgment. Docs. 169, 171. For the following reasons, the court denies plaintiff's motion (Doc. 169) and grants defendant's motion for summary judgment (Doc. 171).

1. **Background**

On January 19, 2020, plaintiff was attacked by another inmate in a dayroom. Doc. 171-1 at 10. According to plaintiff, the assailant "beat plaintiff to the floor with a padlock in hand." Doc. 82 at 6. When the assault was over, plaintiff got up, and defendant opened the dayroom door and instructed the inmates to return to their cells. Doc. 171-1 at 19. At that point, plaintiff returned to his cell, took pain pills, and went to sleep. *Id.*

Plaintiff claims that while the assault was taking place, defendant "stood by as [he] was attacked by a blood gang member who struck [him] a number of times on the left side of his face and

head." Doc. 169 at 1. According to plaintiff, defendant did not use his mace to ward off the attacker or otherwise intervene. *Id.*

A fellow prisoner's affidavit corroborates plaintiff's claims. Cleterrion D. Mosby recounts:

> I was in the dayroom on T-wing the day that Chico Curry was assaulted by some youngster that was African American. I remember standing by the table me and a homeboy of mine when Mr. Curry got hit in the side of the face over and over. The blows dropped him to the floor. I remember Officer Hanna was standing on the outside of the dayroom looking right at the fight. I was thinking he was going to lock both of them up cause that's what usually happens when a fight or assault break out, but the officer didn't do nothing. . . . Mr. Curry was bleeding bad from his nose that I remember. The officer did make both of them leave the dayroom. When I went by Mr. Curry cell when Officer Hanna racked the rest of us up, I asked him was he alright, but when I saw how swole his face was, and nose, I told him that he needed to go to the infirmary cause his jaw might be broke.

Doc. 182-1.

Plaintiff asserts that defendant violated the Eighth Amendment in two ways. First, plaintiff claims that defendant is liable for failing to protect him during his assault. Doc. 169 at 1–2. Second, plaintiff claims that defendant is liable for failing to get him medical care after the assault. *Id.* at 2.

## 2. Summary-judgment standard

Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden

shifts to the nonmovant to show the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but summary judgment will not be defeated with "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

### 3. Statute of Limitations

Defendant claims that this suit is barred by the statute of limitations. Plaintiff filed this suit on January 8, 2022, just shy of the two-year statute of limitations.[1] The complaint erroneously named Nicholas Hannah as the defendant. Doc. 1 at 1.[2] Like Zachary Hanna, Nicholas Hannah was a guard at the Beto Unit, but Zachary Hanna was the officer present in the T-wing for the incident in question. Indeed, at the time of the assault, Nicholas Hannah had not yet started work at the Beto Unit. The below timeline shows the full history of events:

| Date | Event |
| --- | --- |
| **January 20, 2020** | Plaintiff is assaulted in the dayroom. |
| **March 23, 2020** | Nicholas Hannah is hired as a corrections officer. |
| **January 18, 2022** | Plaintiff's complaint naming Nicholas Hannah is deemed filed under the prison-mailbox rule. |
| **February 12, 2022** | Zachary Hanna's employment with TDCJ concludes. |

---

[1] Though plaintiff's complaint was docketed on January 21, 2022, it is postmarked January 18, 2022. Doc. 1-2. Under the "prison mailbox rule," a pro se prisoner's complaint is deemed filed when the prisoner delivers it to prison officials according to prison procedures. *See Starns v. Andrews*, 524 F.3d 612, 616 n.1 (5th Cir. 2008).

[2] Plaintiff named three additional defendants, but those defendants have already been granted summary judgment and the claims against them are not material to this order.

| **April 6, 2022** | The court emails an order to the Attorney General's Office requiring named defendants to file an answer within 60 days. |
|---|---|
| **June 6, 2022** | Defendants, including Nicholas Hannah, file their original answer. |
| **October 19, 2022** | Plaintiff files a letter asking the Court to substitute Zachary Hanna for Nicholas Hannah. |
| **November 7, 2022** | Plaintiff files two motions, both seeking leave to add Zachary Hanna as a new defendant. |
| **February 27, 2023** | The magistrate judge grants plaintiff's motion to amend the complaint, adding Zachary Hanna as a defendant. |
| **May 2023** | Hanna's mother notifies him of the lawsuit after receiving papers in the mail. |

Suits brought under § 1983 are subject to "the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). In Texas, that period is two years. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code § 16.003(a). Thus, absent any equitable tolling, the statute of limitations for plaintiff's claim expired on January 20, 2022.[3]

Plaintiff argues that his amended complaint naming Zachary Hanna, the correct defendant, should "relate back" to the date he

---

[3] The Fifth Circuit has held that, due to the Prison Litigation Reform Act's exhaustion requirements, "limitations on a prisoner's § 1983 claims [are] tolled during administrative proceedings." *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001) (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999)). The magistrate judge concluded that equitable tolling of the statute of limitations would be appropriate in this case. Doc. 102 at 3. However, tolling does not save plaintiff's claims here because his administrative remedies were exhausted on March 28, 2020. *See* Docs. 33-3 at 32, 33-4 at 1 (denying the requests in plaintiff's second grievance form); *see also Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (holding that, in the Texas prison system, administrative remedies are ex-hausted when a prisoner's second grievance form is denied). Thus, by the time plaintiff requested leave to amend his complaint on October 19, 2022 (Doc. 62), the two-year statute of limitations had already run.

filed his original complaint. This inquiry is governed by Federal Rule of Civil Procedure 15(c), which provides in relevant part:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> . . .
>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[4]

It is undisputed that Rule 15(c)(1)(B) is satisfied and that plaintiff made a mistake in naming Nicholas Hannah rather than Zachary Hanna. So, for the amended complaint to relate back, plaintiff must show that during the Rule 4(m) period for service defendant received notice of the action.[5] Rule 4(m) states:

---

[4] An amendment also relates back when "the law that provides the applicable statute of limitations allows relation back," Fed. R. Civ. P. 15(c)(1)(A), but Texas law is silent on relation back for claims of personal injury. *See Balle v. Nueces Cnty.*, 952 F.3d 552, 557 (5th Cir. 2017).

[5] If such a showing had been made, plaintiff would also have to show absence of prejudice and the additional requirements of Rule 15(c)(1)(C)(ii). But because such a showing has not been made, the court need not address these requirements.

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The interaction between Rule 15(c) and Rule 4(m) is usually straightforward. Typically, the court asks if the defendant received notice during the 90-day period after the complaint was filed or any mandatory extensions were given under Rule 4(m). *See McGuire v. Turnbo*, 137 F.3d 321, 325 (5th Cir. 1998) (noting that the Rule 4(m) period referenced in Rule 15(c)(1)(C) includes "any extension the court may grant" for service). But here, plaintiff is a prisoner proceeding pro se and *in forma pauperis*. His complaint was therefore subject to screening before service was ordered. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. Though not specifically addressed by the Fifth Circuit, several courts of appeals have held that the 90-day clock does not begin to run in *in forma pauperis* cases until the screening is complete and service is ordered.[6] Because the resolution of this issue does not change the outcome, the court assumes, without deciding, that the 90-day clock did not begin to run until April 6, 2022, the date the magistrate judge ordered service and an answer.

Thus, for the amended complaint to relate back, defendant must have received notice of the action by July 5, 2022. Defendant swears that he "first learned that [plaintiff] had brought a lawsuit

---

[6] *See Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 453–54 (3d Cir. 1996) (holding that the period for satisfying the relation-back requirements does not begin to run until after screening); *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) (holding that "the period of time before the district court authorized service . . . does not count . . . for purposes of determining the limitation period" regarding the relation back requirements); *Rodriguez v. McCloughen*, 49 F.4th 1120, 1122–23 (7th Cir. 2022) (holding that the "delay caused by screening under § 1915A is 'good cause' for belated service, which increases the time for relation back under Rule 15(c)").

against [him] when a legal document was mailed to [his] mother's house sometime in either April or May 2023." Doc. 171-1 at 3. And there is no competent summary judgment evidence to the contrary.

But even when a defendant has not received actual notice of a lawsuit during the Rule 4(m) period, the complaint will relate back if notice is timely given to a person who shares an "identity of interest" with the defendant. *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998); *see Schiavone v. Fortune*, 477 U.S. 21, 29 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party."). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Jacobsen*, 133 F.3d at 320. Shared counsel can often give rise to an inference of identity of interest. *See, e.g.*, *Barkins v. Int'l Inns, Inc.*, 825 F.2d 905, 907 (5th Cir. 1987) (inferring notice in a Title VII race-discrimination suit because the same counsel simultaneously represented both the improperly named and properly named parties).

In *Jacobsen*, a plaintiff brought a false-arrest action against a city and the police officer who he mistakenly believed had arrested him. 133 F.3d at 317. After a subsequent investigation, the plaintiff moved to amend his complaint to name the true arresting officers. *Id.* The Fifth Circuit held that the newly-named officers shared an identity of interest with the mistakenly-named officer because:

> the City Attorney, who represented [the city and the mistakenly-named officer] . . . would necessarily have represented the newly-named officers. The City Attorney answered the complaint on behalf of the City and [the mistakenly-named officer] and, to do so, presumably investigated the allegations, thus giving the newly-named officers . . . notice of the action."

*Id*. at 320.

However, the logic of *Jacobsen* is not applicable here. *Jacobsen* may have compelled relation back if the Attorney General's Office or the prison were notified of the lawsuit while Zachary Hanna and Nicholas Hannah were both still working at the prison. But by the time an answer was ordered and the Attorney General's Office and TDCJ learned of the suit, Zachary Hanna no longer worked at the prison. Whatever the outer limits of the "identity of interest" inquiry, it cannot be said that a *former* employee shares an identity of interest with his *former* co-worker. *See Williams v. City of Denton*, No. 4:17-cv-811, 2019 WL 2226526, at *2 (E.D. Tex. May 23, 2019) (declining to find "identity of interest" between a former police officer and fellow officers with whom an arrest was made).

The timing is important. Nicholas Hannah and Zachary Hanna were both working at the Beto Unit at the time the suit was filed, but because it is *notice* of the suit that is imputed, the "identity of interest" inquiry focuses on the time at which notice was *received*, not the time the case was *filed*. *See Honeycutt v. Long*, 861 F.2d 1346, 1350 (5th Cir. 1988) (noting that the Supreme Court has indicated, for purposes of Rule 15(c), that "the focus should not be on when notice is given, but when it is received"). Because defendant did not receive actual or imputed notice of this suit by July 5, 2022, defendant is entitled to summary judgment on his statute of limitations defense.

Plaintiff makes two arguments as to why the complaint should relate back, but neither is persuasive.[7] First, plaintiff argues that defendant had notice of this lawsuit because "[d]uring the process of filing a grievance against [a] TDCJ official," "[t]hat official has to stand before the warden on his behalf to [answer] the allegations against [him]." Doc. 69 at 1. But plaintiff offers no evidence

---

[7] Plaintiff makes these arguments in his briefing on whether the amended complaint should be allowed, but he did not make these or other arguments regarding the statute of limitations in his summary-judgment briefing. The court will nevertheless consider his earlier arguments as though they were re-urged in opposition to defendant's motion for summary judgment.

to substantiate this claim, and defendant swears that he only recently learned of the grievance filed against him and that no one ever asked him to give a statement regarding the incident. Doc. 171-1 at 3. The grievance investigation worksheet does not contain a statement from defendant or any other indication that he was contacted during the process. *Id.* at 14.

Even if defendant did participate in the grievance process, he would not have been on sufficient notice of this lawsuit. To start, not every grievance results in a lawsuit. And here, the grievance process concluded in early 2020, nearly two years before this lawsuit was filed. Notice of a grievance is insufficient for Rule 15(c) purposes because "the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001). This is especially so given the length of time that passed between the grievance process and the initiation of suit. *See Moore v. Walton*, 96 F.4th 616, 627 n.8 (3d Cir. 2024) (noting that the grievance process did not put a corrections officer on notice of a lawsuit because the grievance process had concluded nine months prior to the action's initiation).

Second, plaintiff argues that defendant would have learned of this lawsuit because he worked in the same unit as Nicholas Hannah while this lawsuit was on file. Doc. 69 at 2. But plaintiff has no evidence that such a conversation occurred, and his speculation is contradicted by competent summary judgment evidence. *See* Doc. 171-1 at 3 (defendant swearing that he first learned of the lawsuit in April or May 2023). Although defendant and Nicholas Hannah worked in the same unit when the lawsuit was filed, by the time that an order to answer was issued and the Attorney General's Office was notified of the suit, defendant had left his employment at TDCJ.

The statute of limitations ran out on January 20, 2022. For plaintiff's amended complaint to relate back, defendant had to have received notice of the lawsuit by July 5, 2022, 90 days after

the order to answer. Because defendant did not receive notice until April or May 2023, the action against defendant is time-barred.

### 4. Qualified Immunity

Even if this action is not time-barred, defendant claims, and the magistrate judge agrees, that this suit is also barred by the doctrine of qualified immunity. Plaintiff objects to this conclusion, arguing that defendant violated his Eighth Amendment rights through deliberate indifference to his need for protection and medical care as a result of the assault.

To overcome qualified immunity, plaintiff must demonstrate a violation of Eighth Amendment rights that were "clearly established" as a matter of Supreme Court or Fifth Circuit precedent at the time of defendant's alleged misconduct. *Boyd v. McNamara*, 74 F.4th 662, 667 (5th Cir. 2023). "To provide such clarity, the precedent must be sufficiently specific: '[i]t is not enough that a rule be suggested by then-existing precedent.'" *Id.* (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)) (alteration in original). "A 'case directly on point' is not required, but the case law must place a rule's application to a set of facts 'beyond debate.'" *Capps v. Henderson Cnty.*, No. 6:22-cv-391, 2024 WL 1283712, at *3 (E.D. Tex. Mar. 26, 2024) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 584 U.S. at 104. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* In making these determinations, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27

(1984)). However, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Id* at 837.

In the context of "failure to protect" claims, "[i]t is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). In order to demonstrate a failure to protect, plaintiff must show that defendant was deliberately indifferent to "conditions posing a substantial risk of serious harm." *Id.* On the other hand, the Fifth Circuit has clarified that "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *Id.* at 594 (holding that officers violated no "clearly established" law by failing to intervene when a prisoner was attacked and stabbed by two other inmates). Indeed, in *Arenas v. Calhoun*, the Fifth Circuit held that a prison official, even while equipped with a stab-proof vest and pepper spray, was not deliberately indifferent for waiting seven minutes for backup and approval before entering a cell where an inmate was hanging himself. *See* 922 F.3d 616, 622 (5th Cir. 2019).

Here, plaintiff claims that defendant watched a rival gang member "literally beat [plaintiff] to the floor with a padlock" in a dayroom area and waited until the assault was over before telling the inmates to return to their cells.[8] Doc. 27 at 8. Defendant rejects this assertion, stating that he never saw the fight. Doc. 171-1 at 2. But even taking plaintiff's narrative as true, qualified immunity applies to the failure-to-protect claim.

---

[8] To the extent plaintiff suggests that defendant be held accountable for placing him in the same unit as the gang member, the record contradicts such an assertion. It does not appear that defendant was involved in the 2019 Offender Protection Investigation (OPI) that denied plaintiff's transfer request. In addition, the OPI itself found no evidence to corroborate plaintiff's claims that he was being targeted by gang members. Doc. 171-1 at 59. Plaintiff also fails to provide evidence that, before putting plaintiff in the dayroom, defendant "actually knew of a substantial risk" to plaintiff from another inmate. *Farmer*, 511 U.S. at 844.

The assault, as recounted by plaintiff, could not have lasted more than a few moments, certainly less than the delay in *Arenas*. Afterwards, defendant entered the dayroom and sent the prisoners back to their cells. Plaintiff seems to suggest that the defendant had an Eighth Amendment duty to immediately intervene in the assault. This, however, is simply not supported—much less clearly established—by relevant precedent. Where, as here, a prison official is confronted by an altercation involving an inmate armed with a blunt-force object, there is no clearly established constitutional requirement that they immediately intervene at the risk of their own safety. *See Rios v. Scott*, 100 F. App'x 270, 272 (5th Cir. 2004) (holding that "there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury").

Requiring defendant to immediately enter the dayroom and intervene "would create an unenviable Catch-22: Either enter the [dayroom] alone and risk potential attack, or take appropriate precautions and incur liability under § 1983." *Arenas*, 922 F.3d at 621. Instead, prison officials "should be accorded wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. Here, quite simply, defendant did not violate a clearly established constitutional right by failing to immediately enter the dayroom and face plaintiff's attacker. Plaintiff has thus failed to overcome qualified immunity on his failure to protect theory.

Plaintiff next argues that defendant was deliberately indifferent to his need for medical care after the assault. A witness states that plaintiff was "bleeding bad from his nose" when defendant entered the dayroom. Doc. 182-1 at 1. Defendant, on the other hand, swears that he did not see plaintiff's injuries. Doc. 171-1 at 2–3.

Nevertheless, deliberate indifference to the need for medical care "is an extremely high standard to meet." *Domino v. Tex. Dep't*

*of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). In order to prevail on this theory, plaintiff must show that defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "[T]he applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk." *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006). The plaintiff must also demonstrate that defendant "disregarded the substantial health risk about which he knew." *Id*. at 349.

Plaintiff suggests that—based solely on a bloody nose—defendant was constitutionally required provide immediate medical assistance. But even if defendant observed this superficial injury, it does not follow that defendant was aware of a substantial health risk. A bloody nose, while uncomfortable, is not, in and of itself, a sign of serious injury. To be sure, plaintiff was ultimately diagnosed with a broken jaw. However, there is no competent summary judgment evidence that this more serious injury was observed by the defendant or even by any other bystander. Indeed, the plaintiff himself did not request medical assistance until the day after the assault. Doc. 173 at 24, 29. Once plaintiff sought medical care, he received treatment for his broken jaw. *Id*.

In the absence of any request for immediate medical care from plaintiff or other evidence establishing that defendant knew of and disregarded a substantial health risk to plaintiff, there is no clearly established constitutional right to immediate medical treatment in this case. The doctrine of qualified immunity thus bars plaintiff's claims.

### 5. Conclusion

Because plaintiff's amended complaint is barred by both the statute of limitations and the doctrine of qualified immunity, defendant's motion for summary judgment (Doc. 171) is granted. Plaintiff's motion for summary judgment (Doc. 169) on the merits

is denied. All other pending motions are denied as moot and the clerk is directed to close the case.

*So ordered by the court on September 24, 2024.*

J. CAMPBELL BARKER
United States District Judge